1  BERNSTEIN LITOWITZ BERGER
       & GROSSMANN LLP
2  DAVID R. STICKNEY   (Bar No. 188574)
   (davids@blbglaw.com)
3  NIKI L. MENDOZA (Bar No. 214646)
   (nikim@blbglaw.com)
4  TAKEO A. KELLAR   (Bar No. 234470)
   (takeok@blbglaw.com)
5  12481 High Bluff Drive, Suite 300
   San Diego, CA  92130
6  Tel:    (858) 793-0070
   Fax:    (858) 793-0323
7           -and-
   CHAD JOHNSON
8  (chad@blbglaw.com)
   1285 Avenue of the Americas
9  New York, NY  10019
   Tel:    (212) 554-1400
10 Fax:    (212) 554-1444

11

12 *Attorneys for Lead Plaintiff Arkansas*
   *Teacher Retirement System and*
13 *Lead Counsel for the Class*

14

15             UNITED STATES DISTRICT COURT

16            SOUTHERN DISTRICT OF CALIFORNIA

17 MICHAEL ATLAS and GAIL ATLAS,          Case No. 3:07-cv-00488-H-CAB
   Individually and On Behalf of All Others
18 Similarly Situated,

19              Plaintiffs,               **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF**
20          vs.                           **MOTION FOR FINAL APPROVAL**
                                          **OF SETTLEMENT AND PLAN OF**
21                                        **ALLOCATION**
   ACCREDITED HOME LENDERS
22 HOLDING CO.; JAMES KONRATH;            SCHEDULED FOR HEARING:
   JOSEPH J. LYDON; STUART D. MARVIN;     November 2, 2009, 10:30 a.m.
23 JOHN S. BUCHANAN; DAVID E.             Courtroom 13
   HERTZEL; and JEFFREY W. CRAWFORD;
24
25              Defendants.

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................iii-v

I.      PRELIMINARY STATEMENT ...........................................................1

II.     PROCEDURAL HISTORY.................................................................2

    A.      Background ...........................................................................2

    B.      The Commencement And Consolidation Of The
        Class Actions And The Appointment Of Lead
        Plaintiff .................................................................................3

    C.      Active Involvement Of Arkansas Teacher.............................4

    D.      Preparation And Filing Of The Consolidated
        Complaint And Overcoming The Motions To
        Dismiss...................................................................................4

    E.      Early Neutral Evaluation Conference And Case
        Management Orders................................................................5

    F.      Discovery ..............................................................................6

    G.      Class Certification.................................................................7

    H.      Settlement Negotiations ........................................................8

    I.       Bankruptcy Proceedings .......................................................8

    J.       Preliminary Approval Of The Settlement ..............................9

III.    ARGUMENT.....................................................................................10

    A.      The Standards For Judicial Approval Of Class
        Action Settlements...............................................................10

    B.      The Settlement Meets The Ninth Circuit Standard
        For Approval .......................................................................12

        1.      The Risk, Expense, Complexity, And Likely
            Duration Of Further Litigation................................12

        2.      Lead Plaintiff's Case Was Strong, But
            Entailed Risks .........................................................14

        3.      The Amount Obtained In Settlement ........................15

        4.      The Extent Of Discovery Completed, And
            The Stage Of The Proceedings .................................16

        5.      The Experience And Views Of Lead
            Counsel And Lead Plaintiff .....................................17

6.      Reaction Of The Settlement Class Members
To The Proposed Settlement ....................................................19

C.      The Settlement Provided Adequate Notice To The
Settlement Class ............................................................................19

D.      The Plan Of Allocation Is Fair And Reasonable And
Should Be Approved .....................................................................20

IV.     CONCLUSION..........................................................................................22

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*In re Apollo Group, Inc. Sec. Litig.*,
    2008 WL 3072731 (D. Ariz. Aug 4, 2008)................................13

*In re Apple Computer Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...........................13

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...................................10, 21

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ..........................17

*Granada Inv., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ......................................16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ......................................11

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................17

*In Re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................20

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .........................13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ......................................15

*Lundell v. Dell, Inc.*,
    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006)...........................18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .......................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)..................................15, 18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)........................................15

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...............................10, 11, 12

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................10, 17, 19, 21

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........................................................................12, 17

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ....................................................20

*In re Rambus Deriv. Litig.*,
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ..........................................14, 17, 19

*Republic Nat'l Life Ins. Co. v. Beasley*,
73 F.R.D. 658 (S.D.N.Y. 1977) ...........................................................................16

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...............................................................................20

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
718 F. Supp. 1099 (S.D.N.Y. 1989).....................................................................16

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ...............................................................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1387 (D. Ariz. 1989) ......................................................................11

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)...................................................................................12

*Woo v. Home Loan Group, L.P.*,
2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) ..........................................11, 13, 19

*In re Worldcom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................................21

STATUTES, RULES & REGULATIONS

11 U.S.C. § 362..........................................................................................................8

Federal Rule of Civil Procedure
Rule 9(b) ..............................................................................................................4
Rule 23 ...................................................................................................1, 11, 20

Federal Rules of Evidence
Rule 408 ...............................................................................................................1

H.R. Conf. Rep. No. 104-369, 104 Cong. 1st Sess. (1995) ...............................4, 18

Pursuant to an Order of the Court, dated August 4, 2009, Lead Plaintiff, the Arkansas Teacher Retirement System ("Arkansas Teacher" or "Lead Plaintiff"), hereby submits its motion for final approval of the proposed settlement of this class action for $22 million, and the proposed Plan of Allocation for distribution of the net settlement proceeds.[1]

# I.   PRELIMINARY STATEMENT

Following over two years of litigation and extensive arm's-length settlement negotiations overseen by the mediator, the Hon. Layn Phillips (Ret.), the Parties reached a proposed settlement for $22 million in cash, plus accrued interest for the benefit of the Settlement Class (the "Settlement"). Lead Plaintiff submits this motion for approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence. If approved, the Settlement will resolve all claims against all Defendants.[2]   Lead Plaintiff and Lead Counsel – based upon their evaluation of the facts and applicable law, including but not limited to, limitations on the Defendants' ability to pay a substantial judgment and recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement provides a meaningful recovery for the Settlement Class now and is in the best interests of the Settlement Class.

The $22 million Settlement is an excellent result for the Settlement Class. In reaching the Settlement, Lead Counsel and Lead Plaintiff considered the numerous risks in continued litigation against Defendants. The deterioration of Accredited's financial condition created a serious risk that the class would obtain no monetary relief. Indeed, after the Parties reached the agreement in principle to settle, Accredited filed for bankruptcy protection on May 1, 2009. The

---

[1]  This motion is based upon this Memorandum, the accompanying Declaration Of David R. Stickney In Support Of Motion For Final Approval Of Settlement And Plan of Allocation, And Motion for Approval Of Attorneys' Fees And Expenses (the "Stickney Declaration"); the Stipulation of Settlement, dated June 23, 2009, and filed with the Court on July 15, 2009 [Doc. No. 210] ("Stipulation"); all other pleadings and matters of record; and such additional evidence or argument as may be presented at the hearing. Unless otherwise defined herein, all capitalized terms have the meaning stated in the Stipulation.

[2]  The Individual Defendants include James Konrath, Joseph J. Lydon, Stuart D. Marvin, John S. Buchanan, David E. Hertz, and Jeffery W. Crawford (collectively with Accredited Home Lenders Holding Co. ("Accredited"), the "Defendants").

bankruptcy filing automatically stayed all claims against Accredited. In addition, Accredited's officer and corporate liability insurance coverage was being depleted by defense costs and likely would have been completely depleted through continued litigation. Thus, if Lead Plaintiff had not achieved this Settlement when it did, there was a substantial likelihood that the Settlement Class would have recovered nothing.

In addition to the real limitations on sources of recovery, there was also risk in establishing liability and damages at trial. Even though Lead Counsel and Lead Plaintiff believe that this action has substantial merit, it involved complex legal, factual and accounting issues as discussed below. Accordingly, Lead Counsel believes that the monetary benefits the Settlement provides to the Settlement Class outweigh the risks of continued litigation.

On August 3, 2009, this Court held a hearing regarding preliminary approval of the Settlement, and granted preliminary approval of the Settlement and certification of the Settlement Class on August 4, 2009. The Court also authorized Lead Counsel to send Notice of the proposed Settlement to potential Settlement Class Members. The deadline for Settlement Class Members to file objections to the Settlement, Plan of Allocation or the fee and expense application expires on October 13, 2009. In response to at least 4,542 Notices being mailed, as of the filing date of this Motion, no objections have been filed to any part of the Settlement. Moreover, the Claims Administrator has received no exclusion requests. *See* Declaration of Jennifer M. Keough Re: Notice Dissemination And Publication ("Keough Decl.") ¶8, attached as Exhibit ("Ex.") 1 to the Stickney Decl.

## II. <u>PROCEDURAL HISTORY</u>

A detailed description of the procedural history of the Litigation, the claims asserted, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the substantial risks and uncertainties of the Litigation is contained in the accompanying Stickney Declaration. A summary description is provided below.

### A. <u>Background</u>

This is a securities fraud class action against Accredited and certain officers and directors alleging that Defendants made false and misleading statements and omissions in violation of

§§ 10(b), 20(a) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").

Accredited was a "subprime" mortgage lender that loaned money to home buyers and then profited by selling the loans in the secondary market.  As alleged in the Complaint, Accredited claimed superiority over its peers at reducing the risks of subprime lending:  more conservative; dedicated to disciplined and sustainable growth; committed to strict underwriting policies developed from decades of experience; infused with an overarching goal to produce high quality loans.  Defendants repeatedly emphasized these themes in their public statements, including SEC filings and communications to shareholders and analysts.

The Complaint alleges that in contrast to these representations, Defendants internally disregarded underwriting standards in order to increase loan volume due to a declining customer base and increased competition.  The Complaint alleges that the Company's underwriters and appraisers approved risky loans that did not comply with the Company's underwriting policies and senior management overrode the decisions of underwriters and appraisers rejecting risky (and even suspected fraudulent) loans.  Further, the Complaint alleges that while the Company increased volume and extended defective loans, the Company decreased its reserve ratios compared to prior levels in violation of Generally Accepted Accounting Principles and, therefore, reported materially inflated income and earnings.

The Complaint alleges that Defendants' false statements to the market inflated Accredited's stock price from November 1, 2005, through March 12, 2007 (the "Class Period").

**B.    The Commencement And Consolidation Of The Class Actions And The Appointment Of Lead Plaintiff**

On and after March 16, 2007, plaintiffs initiated this Litigation by filing several securities class actions in the United States District Court for the Southern District of California (the "Court").  Stickney Decl. ¶¶4, 15.

On or about May 15, 2007, applicants for appointment as lead plaintiff and lead counsel filed motions under § 21D(a)(3)(B) of the Exchange Act.  Congress enacted the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") in large part

because it wanted institutional investors to step forward and serve as lead plaintiffs in securities class actions.  *See* H.R. Conf. Report No. 104-369 at 34, 104 Cong. 1st Sess. (1995).

The Court found that Arkansas Teacher had the largest financial interest of any movant and was otherwise qualified to serve as lead plaintiff in the Litigation.  On June 25, 2007, the Court entered an Order consolidating the related cases under Case No. 07-CV-0488-H, appointing Arkansas Teacher as Lead Plaintiff, and approving Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel") as Lead Counsel. [Docket No. 39].

### C.   Active Involvement Of Arkansas Teacher

Arkansas Teacher is a public pension system that is organized for the benefit of retired employees of the state's schools with approximately $9 billion in assets under management. Throughout the course of the Litigation, Arkansas Teacher has actively represented the interests of the Class.  Arkansas Teacher has supervised and monitored the progress of this Litigation and actively participated in the case, including attending the Early Neutral Evaluation Conference before the Honorable Ruben B. Brooks, reviewing pleadings submitted in this matter, communicating regularly with Lead Counsel, responding to discovery requests and interrogatories, and participating in and supervising settlement negotiations.  Stickney Decl. ¶18.

### D.   Preparation And Filing Of The Consolidated Complaint And Overcoming The Motions To Dismiss

Lead Counsel engaged in an intensive investigation to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the heightened pleading standards imposed by the PSLRA.  Lead Counsel thoroughly reviewed and analyzed the publicly available information regarding Accredited, including, but not limited to, its SEC filings and financial statements, press releases, reports about the Company in the media and analyst reports; interviewed former employees and other witnesses; and consulted with accountants and other experts to analyze the accounting, underwriting and other issues involved in the case.  Stickney Decl. ¶19.

On August 24, 2007, Lead Plaintiff filed the Corrected Consolidated Class Action Complaint For Violations Of The Federal Securities Laws (the "Complaint," Docket No. 54)

alleging violations of §§ 10(b), 20(a) and 14(a) of the Exchange Act and §§ 11, 12(a)(2) and 15 of the Securities Act against certain Defendants and Accredited Mortgage Loan REIT Trust (the "REIT").

In November 2007, Defendants moved to dismiss the Complaint, which motions Lead Plaintiff opposed.  [Docket Nos. 71, 72, 76, 79, 80, 81, 84, 85].  On January 4, 2008, the Court entered an Order (1) Denying Accredited's Motion To Dismiss; (2) Granting In Part With Leave To Amend Accredited Mortgage Loan REIT Trust's And The Individual Defendants' Motions To Dismiss; and (3) Denying Plaintiff's Motion To Strike ["MTD Order," Docket No. 86].  In particular, the Court held that the Complaint sufficiently stated a claim with respect to:  (i) violations of § 10(b) of the Exchange Act and Rule 10b-5 as to defendants Accredited, Konrath, Lydon, Marvin, Buchanan, and Crawford; (ii) violations of § 20(a) of the Exchange Act as to defendants Konrath, Lydon, Marvin, Buchanan, and Crawford; (iii) violations of  § 14(a) of the Exchange Act and Rule 14a-9 as to defendants Accredited, Konrath, Lydon and Marvin; (iv) violations of § 11 of the Securities Act as to defendants Accredited, Konrath, Lydon, Gunderson, Pratt, Erickson, Espy, and Berglund, and secondarily liable as to defendants Lydon and Konrath as controlling persons of Accredited pursuant to § 15 of the Securities Act; and (v) violations of § 12(a)(2) of the Securities Act as to defendant Accredited, and secondarily liable as to defendants Lydon and Konrath as controlling persons of Accredited pursuant to § 15 of the Securities Act.

On January 30, 2008, Lead Plaintiff notified the Court that Plaintiffs would not amend the Complaint but would proceed under the Complaint in accordance with the Court's MTD Order [Docket No. 87].

On March 14, 2008, Defendants answered the Complaint [Docket Nos. 99, 100].

### E.  Early Neutral Evaluation Conference And Case Management Orders

The ruling on the motions to dismiss lifted the PSLRA's automatic stay of discovery. Discovery, however, remained stayed pursuant to Local Rule 16.  On April 30, 2008, the Court held an Early Neutral Evaluation ("ENE") Conference [Docket Nos. 96-98, 101-107].  Lead

1  Counsel and Arkansas Teacher's representative participated in person at the conference with the

2  Honorable Ruben B. Brooks and the Defendants and their counsel.

3  The Court held a telephonic Case Management Conference on July 1, 2008 [Docket Nos.

4  113-115]. The Court thereafter issued a Case Management Conference Order Regulating

5  Discovery And Other Pretrial Proceedings ("CMC Order") [Docket No. 114], and amendments

6  thereto [Docket No. 148, 167, 168, 169], setting forth certain discovery deadlines, including a

7  discovery cut-off; certain deadlines for pretrial disclosures and pretrial motions; a deadline for

8  amending the pleadings; a deadline for briefing, and a hearing date, for Lead Plaintiff's motion

9  for class certification; and setting a final pretrial conference for October 5, 2009.

**F.   Discovery**

11  Prior to reaching an agreement to settle, the discovery process was far advanced.  As

12  detailed in the accompanying Stickney Declaration, such discovery included, for example, (a)

13  preparing and serving document requests and interrogatories to Defendants; (b) preparing and

14  serving subpoenas to non-party witnesses to obtain documents; (c) meeting and conferring with

15  recipients of document requests; (d) moving to compel production of documents; (e) locating and

16  interviewing potential witnesses; (f) obtaining, organizing and analyzing over four million pages

17  of documents produced by Defendants and third parties; and (g) deposing material witnesses.

18  Stickney Decl. ¶31.

19  The parties also participated in numerous meet-and-confer sessions and motion practice

20  regarding the scope of discovery on the parties and third-parties.  As described below, these

21  discovery disputes were overseen by the Honorable Cathy Ann Bencivengo.

22  The discovery hearings and regular status conferences with Judge Bencivengo took place

23  on August 22, 2008, September 5, 2008, December 23, 2008, January 9, 2009, January 28, 2009,

24  February 27, 2009, March 9, 2009, March 17, 2009, and April 10, 2009 [Docket Nos. 131, 132,

25  142, 158, 159, 164, 165, 167, 175, 178, 180, 190, 193].

26  Ultimately, Lead Counsel obtained over four million pages of documents as a result of

27  the document requests and subpoenas directed to Accredited, the Individual Defendants, and

28  numerous third parties.  Lead Counsel undertook a diligent and extensive process of reviewing

and analyzing such documents in preparation for further discovery efforts and trial of the action. Stickney Decl. ¶42.

Along with an intensive review and analysis of documents, Lead Counsel commenced the taking of depositions in June 2008 pursuant to its deposition plan.  In total, 17 depositions were conducted, including 12 depositions of former employees of Accredited noticed by Lead Plaintiff.  In addition, prior to reaching the agreement to settle this action, the Parties were negotiating the schedule and scope of the depositions of the Individual Defendants, representatives of Accredited, and third-party witnesses.  Stickney Decl. ¶44.

Lead Counsel also worked extensively with experts and consultants at different stages of the case to prepare the Complaint, analyze documents, prepare for and take depositions, prepare for trial, move for class certification, and prepare for mediation.  Stickney Decl. ¶47.

**G.    Class Certification**

On February 20, 2009, Lead Plaintiff filed a motion to certify this action as a class action and to appoint the Lead Plaintiff, Arkansas Teacher, as class representative along with William F. Kornfeld, Jr. ("Kornfeld") as an additional class representative [Docket No. 170].  Lead Plaintiff's motion included an expert declaration from Gregg A. Jarrell, a Professor of Economics and Finance at the University of Rochester's William E. Simon Graduate School of Business Administration, and documents and excerpts of deposition testimony further supporting class certification.  Defendants filed oppositions to Lead Plaintiff's motion to certify the Class on April 10, 2009 [Docket Nos. 189, 191].

Prior to Lead Plaintiff filing its reply brief in support of the motion, the Settlement was reached between the Parties.  Pursuant to the Court's April 16, 2009 order, and to enable the Parties and the Court to focus on documenting and promptly submitting the Settlement for the Court's consideration, on April 21, 2009, the Parties submitted a joint motion to vacate the class certification hearing and the prior scheduling orders, and to adopt a proposed schedule of settlement procedures [Docket No. 196]. By Order dated April 27, 2009, the Court granted the Parties' joint motion, vacating the briefing schedule and hearing on Lead Plaintiff's class certification motion, vacating the Court's prior scheduling orders, and issued a scheduling order

1    for submission and consideration of approval of the Settlement.  [Docket No. 197].

2        **H.    Settlement Negotiations**

3        In December 2008, the Parties agreed to mediate before the Honorable Layn Phillips

4    (Ret.).  Commencing on March 13, 2009, Lead Counsel, along with counsel for Defendants,

5    participated in person at the mediation.

6        At the March 13, 2009 mediation session, the Parties presented their respective views

7    regarding the merits of the action as well as their views concerning available defenses, potential

8    sources of recovery, the evidence and damage analyses.  The Parties ultimately reached an

9    impasse.  The mediation was suspended and litigation continued.

10        Following the March 13, 2009 mediation, Judge Phillips remained in contact with the

11   Parties and explored the possibility of further settlement discussions.  On April 15, 2009, the

12   Parties held another mediation session under the supervision of Judge Phillips.  Stickney Decl.

13   ¶61.  Throughout the course of the settlement process, the negotiations were undertaken at arm's-

14   length, between and among experienced counsel, the well-informed Lead Plaintiff and

15   Defendants.  Ultimately, after hard-fought negotiations, on April 15, 2009, the Parties agreed to a

16   settlement of this action.

17        On April 16, 2009, the Parties notified the Court that a settlement had been reached

18   [Docket No. 195].  The Parties then jointly moved to vacate certain case management dates to

19   enable the Parties and the Court to preserve their resources by focusing on expeditiously

20   documenting and submitting the settlement for the Court's approval.  [Docket No. 196].

21        **I.    Bankruptcy Proceedings**

22        After reaching the Settlement and notifying the Court of the Settlement, on May 1, 2009,

23   Accredited filed a voluntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy

24   Court, District of Delaware.  Pursuant to 11 U.S.C. § 362, the commencement of Accredited's

25   bankruptcy proceeding acted as an automatic stay of actions or proceedings against Accredited,

26   including the instant action.  On May 19, 2009, Accredited notified this Court of the proceeding

27   before the Bankruptcy Court.  Stickney Decl. ¶65.

28

In light of the bankruptcy proceeding and automatic stay, by Order dated June 3, 2009, this Court granted the Parties' joint motion to modify certain deadlines, set a deadline for filing the preliminary approval motion of July 1, 2009, and set a preliminary approval hearing date of August 3, 2009, as well as other settlement-related deadlines.  *Id.* ¶66.

By Order dated July 7, 2009, the Bankruptcy Court modified the automatic stay, to the extent necessary, to allow preliminary approval of this Settlement.  In addition, on July 1, 2009, Accredited filed in the Bankruptcy Court its motion for an order approving, to the extent necessary, of Accredited's participation in the Settlement, and of the use of the proceeds of certain directors' and officers' liability insurance policies to fund the Settlement. On August 27, 2009, the Bankruptcy Court entered an order granting Accredited's motion.  *Id.* ¶67.

J.      **Preliminary Approval Of The Settlement**

Immediately upon reaching the agreement in principle to settle the consolidated action, Lead Counsel undertook the process of drafting, discussing and finalizing the Stipulation of Settlement and exhibits thereto.  Lead Counsel held extensive sessions with counsel for Defendants in this regard, in addition to appearing in the Bankruptcy Court to protect the interests of the Class and to assist in obtaining approval for Accredited's participation in the Settlement.  Stickney Decl. ¶62.

On July 15, 2009, Lead Plaintiff moved for preliminary approval of the Settlement, certification of the Settlement Class and for approval to send notice of the Settlement to Settlement Class Members.  Following a hearing on August 3, 2009, on August 4, 2009, the Court issued the Preliminary Approval Order [Docket No. 213], granting preliminary approval of the Settlement, authorizing the sending of the Notice, setting a final approval hearing for November 2, 2009, and certifying the following Settlement Class:

> all persons and entities who purchased or acquired Accredited Securities between November 1, 2005, through March 12, 2007, inclusive, and who were injured thereby.  Excluded from the Settlement Class are Accredited, Berglund, Buchanan, Crawford, Erickson, Espy, Gunderson, Konrath, Lydon, Marvin, and Pratt; the officers and directors of Accredited at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest, including the REIT.  Also excluded from the Settlement Class are those Persons

1  who timely and validly request exclusion from the Settlement Class pursuant to
2  the Notice of Pendency and Proposed Settlement of Class Action.

3          As described below, pursuant to the Court's Preliminary Approval Order, Lead Plaintiff

4  provided notice of the Settlement to the Settlement Class through publication in *The Investor's*

5  *Business Daily*, postings on Internet websites, and the mailing of 4,542 Notices.   Keough Decl.

6  ¶8.

7          No later than September 11, 2009, the Settlement Fund of $22 million was to be

8  deposited into an interest-bearing account, for the benefit of the Settlement Class.[3]  The entire

9  Settlement Fund, plus interest (after deduction of Court-approved expenses and attorneys' fees),

10  will be distributed to Authorized Claimants who timely submit valid proofs of claim.  There will

11  not be any reversion to Accredited (or any other person or entity) of any portion of the

12  Settlement Fund.

13  **III.   ARGUMENT**

14          **A.      The Standards For Judicial
               Approval Of Class Action Settlements**

15

16          It is well established in the Ninth Circuit that "voluntary conciliation and settlement are

17  the preferred means of dispute resolution," especially in class action lawsuits.[4]   Indeed, class

18  actions readily lend themselves to compromise because of the difficulties of proof, the

19  uncertainties of the outcome, and the typical length of the litigation.   It is beyond question that

20  "there is an overriding public interest in settling and quieting litigation," and this is "particularly

21  true in class action suits."[5]   "In most situations, unless the settlement is clearly inadequate, its

22

23  _____

24  [3]  As of the filing of this Motion, only $12,986,116.00 of the Settlement Fund has been funded.

25  [4]  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re
     Omnivision Techs.,* 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be
26  mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits.").

27  [5]  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  The law always favors the
     compromise of disputed claims, particularly those asserted in class actions.   *In re Pac. Enters.
28  Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also Class Plaintiffs v. Seattle*, 955 F.2d 1268,
     1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.

acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008).

As recognized by this Court, under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate.  *See Woo v. Home Loan Group, L.P.*, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008) (Huff, J.).  On a motion for approval of a class action settlement, a court must determine "whether the interests of the class will be better served by resolution of the litigation than by continuation of it."  *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

A court's role in settlement approval is essentially twofold, determining whether the settlement: (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate.  *Officers for Justice*, 688 F.2d at 625.  As recognized by this Court, in exercising its discretion to approve the settlement of a class action, a court should balance a number of factors, including the following:

> "[T]he strength of the plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

*Home Loan Group.*, 2008 WL 3925854, at *3 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also In re PETCO Corp. Sec. Litig.*, Case No. 05-CV-0823 H (Huff, J.), Sept. 2, 2008 Order Finally Approving Class Action Settlement And Plan Of Allocation Of Settlement Proceeds And Granting Lead Plaintiff's Counsel's Motion For An Award Of Attorney Fees ("*PETCO* Order"), at 3.

"'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'"  *Home Loan Group*, 2008 WL 3925854, at *3 (quoting *Officers for Justice*, 688 F.2d at 625).

1    In exercising its sound discretion, courts should not adjudicate the merits of the case.  As

2   the Ninth Circuit has noted:

3           [T]he settlement or fairness hearing is not to be turned into a trial or
            rehearsal for trial on the merits.  Neither the trial court nor this court is
4           to reach any ultimate conclusions on the contested issues of fact and law
            which underlie the merits of the dispute, for it is the very uncertainty of
5           outcome in litigation and avoidance of wasteful and expensive litigation
            that induce consensual settlements.  The proposed settlement is not to be
6           judged against a hypothetical or speculative measure of what *might*
7           have been achieved by the negotiators.

8   *Officers for Justice*, 688 F.2d at 625; *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.

9   1982) ("in order to avoid a trial, the judge must [not] in effect conduct one").

10          The presumption of reasonableness in this Litigation is fully warranted because the

11  Settlement is the product of arm's-length negotiations, presided over by an experienced

12  mediator.  It is the considered judgment of Lead Counsel that this Settlement is a fair,

13  reasonable, and adequate resolution of the Litigation and warrants this Court's approval.  *See*

14  Stickney Decl. ¶¶69-70.

15          **B.      The Settlement Meets The
                      Ninth Circuit Standard For Approval**

16

17          **1.      The Risk, Expense, Complexity, And
                      Likely Duration Of Further Litigation**

18          There was a very substantial risk that Defendants would be unable to meaningfully

19  satisfy a substantial judgment.  That risk was heightened when Accredited filed for bankruptcy

20  protection on May 1, 2009, shortly after the agreement in principle to settle was reached.  The

21  bankruptcy filing automatically stayed all claims against Accredited.  In addition, Accredited's

22  officer and corporate liability insurance coverage was being depleted by defense costs and likely

23  would have been completely depleted through continued litigation.  Thus, if Lead Plaintiff had

24  not achieved this Settlement when it did, there was a substantial likelihood that the Settlement

25  Class would have recovered substantially less or nothing.

26          The bankruptcy filing required additional proceedings in order to obtain the $22 million

27  for the benefit of the Settlement Class, including a request that the Bankruptcy Court lift the

28  automatic stay for the limited purpose of approval of this Settlement, and approve of

1   Accredited's participation in this Settlement and the use of certain insurance policy proceeds to

2   fund the Settlement.

3       Lead Plaintiff also faced numerous additional risks.  Defendants asserted in the Answer

4   and argued throughout the Litigation that industry-wide forces, and not the alleged

5   misstatements, caused the investors' losses.  Defendants undoubtedly would have continued to

6   argue that investors were damaged by market forces and not any alleged misstatement.  *See*

7   Stickney Decl. ¶71.  In addition, Defendants argued that Lead Plaintiff would be unable to prove

8   that Defendants' statements were false, or that they were made with scienter.  For example,

9   Defendants argued that they publicly disclosed that Accredited made exceptions to its

10  underwriting policies, and that even the most sophisticated financial institutions failed to predict

11  the current market turmoil.  If the Court or trier of fact agreed with Defendants, any recovery

12  would have been substantially reduced or eliminated altogether.

13      Even if Lead Plaintiff prevailed through summary judgment, risks to the Settlement Class

14  remain.  Even a meritorious case can be lost at trial.  See *In re JDS Uniphase Corp. Sec. Litig.*,

15  2007 WL 4788556 (Verdict and Settlement Summary) (N.D. Cal. Nov. 27, 2007) (after a lengthy

16  trial, jury returned a verdict against plaintiffs, the action was dismissed and plaintiffs were

17  ordered to pay defendants the costs of defending the action).   Even success at trial does not

18  eliminate the risk.[6]

19      If this Settlement is not approved, the Litigation is likely to continue (against the

20  Individual Defendants) for years and the ultimate result of further litigation cannot be foreseen.

21  Given the stakes involved in this Litigation, an appeal is virtually assured regardless of the result

22  of trial.  Instead of the lengthy, costly, and uncertain course of further litigation, the Settlement

23

24

---

25  [6]  For example, following a verdict in favor of plaintiffs in *In re Apollo Group, Inc. Sec. Litig.*,

26  the court overturned the verdict and granted defendants' motion for judgment as a matter of law.
    2008 WL 3072731 (D. Ariz. Aug 4, 2008).  In *In re Apple Computer Sec. Litig.*, 1991 WL

27  238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.
    The court, however, overturned the verdict, entered judgment notwithstanding the verdict for the

28  individual defendants and ordered a new trial with respect to the corporate defendant.

provides an immediate and certain recovery for the Settlement Class.  The Settlement clearly outweighs the substantial risks associated with lengthy continued litigation.

> **2.     Lead Plaintiff's Case Was Strong, But Entailed Risks**

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Rambus Deriv. Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).  Lead Counsel believes that the settlement terms compare favorably to the risks associated with continued litigation.  Lead Counsel conducted an extensive investigation and analysis of the claims, and obtained a thorough understanding of the strengths and weaknesses of the claims, as well as the resources available to satisfy a judgment or settlement.  Lead Counsel's efforts included, but were not limited to:  (i) drafting of a detailed consolidated complaint after review and analysis of the Company's SEC filings, annual reports, and other public statements, and interviews with confidential witnesses; (ii) extensive briefing on Defendants' motions to dismiss; (iii) obtaining evidence through discovery, including review and analysis of over four million pages of documents produced by Defendants and third-parties; (iv) 17 depositions; (v) consultations with experts; (vi) review and analyses of potential sources of recovery; (vii) drafting of a motion for class certification; and (viii) drafting of a mediation statement and preparing for and participating in two mediation sessions.  Stickney Decl. ¶¶4, 58.

Lead Counsel also performed additional analyses and valuations of the claims and risks presented, and the resources available to pay a judgment or settlement.  Lead Counsel retained and conferred with experts, including an experienced damages consultant regarding the potential scope of class-wide damages.  As a result, Lead Counsel gained a comprehensive understanding of the strengths and weaknesses of the case.  *See* Stickney Decl. ¶¶5, 19, 47, 59, 68, 87.

The proposed Settlement provides Settlement Class Members with an ***immediate*** cash payment.  In sum, Lead Plaintiff and Lead Counsel have concluded that the Settlement is in the best interests of Lead Plaintiff and the Settlement Class and that the Settlement is fair,

reasonable, and adequate. This conclusion is based on, among other things, the limitations on Defendants' ability to satisfy a judgment; the substantial expense and time necessary to continue prosecuting this Litigation through dispositive motions, trial, appeals or any other potential proceedings; the significant uncertainties in predicting the outcome of this complex litigation; and the substantial likelihood that the Settlement Class would recover less than the amount provided by the Settlement, or nothing at all.

### 3.   The Amount Obtained In Settlement

As set forth above, the Settlement provides for the recovery of $22 million in cash plus interest allocated among Settlement Class Members after deduction for Court-approved fees and expenses.  Pursuant to the Stipulation, the $22 million was to be deposited into an escrow account on or before September 11, 2009, to earn interest for the benefit of the Settlement Class.

If the Litigation had continued, Lead Plaintiff faced substantial risks, including, for example, establishing Defendants' liability and the Settlement Class' full amount of damages at summary judgment or trial.  As discussed above, particularly in light of Accredited's bankruptcy filing and the rapid depletion of insurance proceeds, there were also tremendous risks with respect to potential sources of recovery and the ability of Defendants to pay a substantial judgment.  In addition, litigating this complex securities fraud class action to completion would result in significant expense and risk.  This recovery, obtained in the face of the real risk of no recovery at all, is particularly supportive of approval of the Settlement.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a settlement."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In fact, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations omitted)).  Here the substantial amount of the Settlement clearly falls within the "range of reasonableness" and provides a tremendous

benefit to the Settlement Class considering, *inter alia*, the limited resources to satisfy a judgment or settlement and other litigation risks.

While issues on damages might have yielded less or no recovery after trial, even the possibility that the Settlement Class "might have received more if the case had been fully litigated is no reason not to approve the settlement."[7]   Indeed, "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination . . . Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."   *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted).

The Settlement confers an immediate and valuable cash benefit to eligible Settlement Class Members.  Given the complexities of the Litigation and the continued risks if the Parties were to proceed through dispositive motions and trial, the Settlement presents a reasonable resolution of this action and eliminates the risk that the Settlement Class might not otherwise recover.

### 4.   The Extent Of Discovery Completed, And The Stage Of The Proceedings

The stage of proceedings and discovery are additional factors supporting the Settlement. Here, Lead Counsel advanced the case through a detailed consolidated complaint, briefing and a decision on Defendants' motions to dismiss, discovery, consultation with experts, a motion for class certification, and preparation and participation in mediation sessions before an experienced mediator.  In addition, Lead Counsel conducted a thorough investigation of the facts and claims of this case, including review and analysis of the Company's SEC filings, annual reports, and other public statements; interviews with confidential witnesses; review and analysis of over four million pages of documents produced by Defendants and third-parties; review and analyses of

---

[7]  *Granada Inv.*, *Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion.").

potential sources of recovery; and depositions. *See* Stickney Decl. ¶¶4, 19, 68, 87. This Settlement is based upon adequate information and a sufficient investigation for an in-depth analysis of the Settlement Class' claims.

5.     **The Experience And Views Of
       Lead Counsel And Lead Plaintiff**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation."[8] This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378. Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 WL 1594403, at *9 (internal citation omitted).

This action has been litigated by experienced and competent counsel on both sides. Lead Counsel has many years of experience in litigating securities fraud actions throughout the country, and in assessing the relevant merits of each side's case.[9] The Parties have been actively litigating this case for over two years. Lead Counsel conducted a sophisticated investigation into the claims as asserted in the Complaint, including but not limited to multiple interviews with confidential witnesses, review of the extensive document production, numerous depositions, and consultation with experts. Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of Plaintiffs' claims, both factually and legally, and was able to engage in a rigorous negotiation process with the Defendants.

Additionally, throughout the Litigation and settlement negotiations, Defendants have been represented by experienced counsel from prominent law firms. Accredited was represented

---

[8] *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted); *Rambus,* 2009 WL 166689, at *3; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007).

[9] *See* Firm Resume of BLB&G, attached as Ex. 3 to Stickney Decl.

MEMORANDUM OF POINTS & AUTHORITIES
Case No. 3:07-cv-00488-H-CAB

by Kirkland & Ellis LLP and Luce Forward, and the Individual Defendants were represented by Paul, Hastings, Janofsky & Walker LLP, all firms having substantial experience in this type of litigation.  Counsel for Defendants were as equally well-informed and their representation of the Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class.

As a result, the Parties' settlement negotiations were extensive and required two formal full-day mediation sessions before the Honorable Layn Phillips (Ret.), a well-regarded mediator with substantial experience in the mediation of complex actions.  Therefore, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining between the Parties, and this factor supports a finding that the Settlement is fair, adequate and reasonable for purposes of final approval.  The arm's-length negotiations support approval of the Settlement.  *See Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

It is Lead Counsel's informed opinion that, given the uncertainty and further substantial expense of pursuing this action through trial and possible appeals, and the constraints on Defendants' ability to pay, the proposed Settlement is fair, reasonable and adequate and is in the best interests of the Settlement Class.  *See* Stickney Decl. ¶¶3, 6, 69.

Moreover, under the regime put in place with the enactment of the PSLRA, the Lead Plaintiff's approval of a settlement should be accorded "special weight because [the Lead Plaintiff] may have a better understanding of the case than most members of the class."  *DIRECTV,* 221 F.R.D. at 528 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.44).  Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Report No. 104-369 at 32.

Here, Lead Plaintiff's approval of the Settlement is compelling evidence that the Settlement is fair, reasonable and adequate.  *See* Stickney Decl. ¶¶18, 61, 68, 70.

MEMORANDUM OF POINTS & AUTHORITIES
Case No. 3:07-cv-00488-H-CAB

6. **Reaction Of The Settlement
Class Members To The Proposed Settlement**

As courts have noted, the reaction of the class to the proffered settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *Rambus,* 2009 WL 166689, at *3 (citation omitted).  Indeed, courts have explained that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision,* 559 F. Supp. 2d at 1043 (citation omitted); *see also Home Loan Group,* 2008 WL 3925854, at *3 (finding that lack of objections and exclusion requests supports settlement approval); *PETCO* Order, at 5 (finding lack of objections "is entitled to significant weight").

Pursuant to this Court's August 4, 2009 Order, the deadline for Settlement Class Members to file their requests to exclude themselves from the Settlement or to object to any aspect of the Settlement, the proposed Plan of Allocation or Lead Counsel's fee and expense request expires on October 13, 2009.  In response to at least 4,542 Notice packets mailed, as of the filing date of this Motion, there are no objections to any aspect of the Settlement and no requests for exclusion.[10]  The overwhelmingly favorable reaction of the Settlement Class further supports approval of the Settlement.

C. **The Settlement Provided Adequate
Notice To The Settlement Class**

As required by the Court's Order preliminarily approving of the Settlement, Lead Plaintiff  (through the Claims Administrator) notified potential Settlement Class Members of the Settlement by mailing a copy of the Notice to all persons (as stated in Accredited's transfer agent's records) who purchased or acquired Accredited Securities during the Class Period. Keough Decl. ¶¶3-8.  In addition, a Summary Notice was published in the national edition of *The Investor's Business Daily. Id.* ¶9.  The Notice and the Summary Notice also referenced the

---

[10]  *See* Keough Decl. ¶¶8, 12, 13.  Those timely seeking to exclude themselves, or "opt out" of the Settlement Class, if any, will be listed in Ex. 1 to the Proposed Judgment, which will be submitted following expiration of the deadline for opting out of the Settlement Class.

Internet websites for Lead Counsel and the Claims Administrator where investors could view and download the Notice and Proof of Claim form. *Id.* ¶11; Stickney Decl. ¶75. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1).

The Notice advises Settlement Class Members of the essential terms of the Settlement, sets forth the procedure for objecting to the Settlement, and provides specifics on the date, time and place of the final approval hearing. The Notice also contains information regarding Lead Counsel's fee application and the proposed plan of allocating the settlement proceeds among Settlement Class Members. Thus, the Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement.

Here, the Notice fairly apprises Settlement Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, and due process. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice regimen); *In Re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007) (same); *see also Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (citations omitted).

**D.    The Plan Of Allocation Is Fair And Reasonable And Should Be Approved**

Lead Plaintiff has proposed a plan to allocate the proceeds of the Settlement among Settlement Class Members who submit valid Claim Forms. The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a result of the alleged false and misleading offering statements. While all Settlement Class Members' claims arise from the same false or misleading statements, the amount of such potential damages varied. Differences of this nature among class

members are common in securities litigation and are commonly addressed by a plan of allocation.

Lead Plaintiff considered different approaches for allocating the recovery to claimants. For the purpose of allocation, Lead Plaintiff engaged Forensic Economics, Inc. to prepare the plan to allocate the settlement proceeds among claimants, and to provide an opinion on whether the Plan of Allocation is fair and reasonable.  Stickney Decl. ¶¶78-79.  The Affidavit of James L. Canessa ("Canessa Affidavit"), attached to the Stickney Declaration as Ex. 2, explains the methods used to determine the Recognized Losses and the basis for the analysis.  As explained more fully in the Canessa Affidavit, a "Recognized Loss" will be calculated for each purchase or acquisition of Accredited Securities during the Class Period as reflected on the Claim Forms timely submitted by Settlement Class Members.  The calculation of the Recognized Loss will depend upon several factors, including what type of Security was purchased, how many shares of the Security were purchased, when and at what price the Security was purchased or otherwise acquired, and when and at what price the Security was sold.

Assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate.  *Omnivision,* 559 F. Supp. 2d at 1045; *Class Plaintiffs*, 955 F.2d at 1276.  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *In re Worldcom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).  A plan of allocation that allocates settlement funds to class members based on the extent of their injuries or the strength of their claims is reasonable.  *Omnivision,* 559 F. Supp. 2d at 1045.

The goal of an equitable plan of allocation is fairness to the class as a whole, taking into consideration the strengths of claims based upon available facts and evidence, as well as the size of the fund to be distributed.  The proposed Plan of Allocation in this case is based on such principles and therefore falls within the mainstream of allocation plans routinely approved by courts.  The proposed Plan of Allocation was adequately explained in the Notice sent to Settlement Class Members.  It was prepared in consultation with Lead Plaintiff's damages

1  consultant, and is necessarily fair, reasonable and adequate to the Settlement Class as a whole.

2  *See* Canessa Affidavit ¶¶8-11.

3      Notably, in response to over 4,542 Notices, as of the filing date of this Motion, there have

4  been no objections to the proposed Plan of Allocation and no requests for exclusion. *See*

5  Keough Decl. ¶8.

6  **IV.   CONCLUSION**

7      For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final

8  approval of the Settlement and Plan of Allocation, and enter the proposed Final Judgment And

9  Order Of Dismissal With Prejudice and proposed Order Approving Plan Of Allocation submitted

10  herewith.

11  Dated:  September 16, 2009               Respectfully submitted,

12                                          BERNSTEIN LITOWITZ BERGER
                                                & GROSSMANN LLP

13

14                                          _____*/s/ David R. Stickney*_____
                                                DAVID R. STICKNEY

15

16                                          DAVID R. STICKNEY
                                            NIKI L. MENDOZA

17                                          TAKEO A. KELLAR
                                            12481 High Bluff Drive, Suite 300

18                                          San Diego, CA 92130
                                            Tel:    (858) 793-0070

19                                          Fax:    (858) 793-0323
                                                  -and-

20                                          CHAD JOHNSON

21                                          1285 Avenue of the Americas
                                            New York, NY  10019

22                                          Tel:    (212) 554-1400
                                            Fax:    (212) 554-1444

23
                                            *Attorneys for Lead Plaintiff Arkansas Teacher*
24                                          *Retirement System and Lead Counsel to the Class*

25

26

27

28