BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
DAVID R. STICKNEY  (Bar No. 188574)
(davids@blbglaw.com)
NIKI L. MENDOZA  (Bar No. 214646)
(nikim@blbglaw.com)
TAKEO A. KELLAR  (Bar No. 234470)
(takeok@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA  92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
            -and-
CHAD JOHNSON
(chad@blbglaw.com)
1285 Avenue of the Americas
New York, NY  10019
Tel:     (212) 554-1400
Fax:     (212) 554-1444

*Attorneys for Lead Plaintiff Arkansas
Teacher Retirement System and
Lead Counsel for the Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ATLAS and GAIL ATLAS, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>ACCREDITED HOME LENDERS HOLDING CO.; JAMES KONRATH; JOSEPH J. LYDON; STUART D. MARVIN; JOHN S. BUCHANAN; DAVID E. HERTZEL; and JEFFREY W. CRAWFORD;<br><br>            Defendants. | Case No. 3:07-cv-00488-H-CAB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES**<br><br>SCHEDULED FOR HEARING:<br>November 2, 2009, 10:30 a.m.<br>Courtroom 13 |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................... ii-iv

I.    PRELIMINARY STATEMENT ................................................................... 1

II.   HISTORY OF THE LITIGATION ............................................................. 3

III.  THE REQUESTED ATTORNEYS' FEES ARE FAIR
      AND REASONABLE ..................................................................................... 3

      A.    A Reasonable Percentage Of The Fund Recovered
            Is An Appropriate Approach To Awarding
            Attorneys' Fees In Common Fund Cases ....................................... 3

      B.    A Fee Of 25%, Net Of Expenses, Is Reasonable ......................... 4

      C.    Consideration Of The Relevant Factors Used By
            Courts In The Ninth Circuit Justifies A Fee Award
            Of 25% ............................................................................................... 5

            1.    The Results Achieved ........................................................... 5

            2.    Risks Of Litigation ................................................................ 7

            3.    The Skill Required And Quality Of The
                  Work Performed ..................................................................... 8

            4.    The Contingent Nature Of The Fee And The
                  Financial Burden Carried By Counsel ............................... 9

            5.    Awards Made In Similar Cases ........................................... 11

            6.    Reaction Of The Settlement Class Supports
                  The Fees And Expenses Sought .......................................... 12

            7.    The Lodestar Crosscheck Confirms The
                  Reasonableness Of The Requested Fee ............................. 13

IV.   PLAINTIFFS' COUNSEL'S EXPENSES ARE
      REASONABLE AND WERE NECESSARILY
      INCURRED TO ACHIEVE THE BENEFIT OBTAINED
      FOR THE SETTLEMENT CLASS .............................................................. 14

V.    CONCLUSION .............................................................................................. 17

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................4, 11

*In re Apollo Group, Inc. Sec. Litig.,*
    2008 WL 3072731 (D. Ariz. Aug. 4, 2008) .................................................................11

*Blum v. Stenson,*
    465 U.S. 886 (1984) .........................................................................................12

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ...............................................................................16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ................................................................9

*In re Equity Funding Corp. Sec. Litig.,*
    438 F. Supp. 1303 (C.D. Cal. 1977) ........................................................................9

*Gerstein v. Micron Tech.,*
    1993 U.S. Dist. LEXIS 21215 (D. Idaho Sept. 10, 1993) .....................................................4

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ..............................................................................16

*Gottlieb v. Wiles,*
    150 F.R.D. 174 (D. Colo. 1993) ...........................................................................16

*Gustafson v. Valley Ins. Co.,*
    2004 WL 2260605 (D. Or. Oct. 6, 2004) .....................................................................8

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .............................................................................4

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ...............................................................................14

*In re Heritage Bond Litig.,*
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ...............................................................7, 8

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ..........................................................................7, 12

*In re Immunex Sec. Litig.,*
    864 F. Supp. 142 (W.D. Wash. 1994) .......................................................................13

*In re JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................................11

*Keith v. Volpe*,
   501 F. Supp. 403 (C.D. Cal. 1980) ...................................................................13

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ...................................................................4, 12

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................................................11, 12, 16

*Kurzweil v. Philip Morris Cos.*,
   1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999) ...................................................................13

*Lewis v. Starbucks Corp.*,
   2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ...................................................................6

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ...................................................................13

*In re M.D.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...................................................................12

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ...................................................................16

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................... passim

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...................................................................2, 3

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
   1984 WL 21981 (N.D. Ill. Sept. 14, 1984) ...................................................................12

*In re Pub. Service Co. of New Mexico*,
   1992 WL 278452 (S.D. Cal. July 28, 1992) ...................................................................12

*In re Quintus Sec. Litig.*,
   2006 WL 3507936 (N.D. Cal. Dec. 5, 2006) ...................................................................15

*Rabin v. Concord Assets Group, Inc.*,
   1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) ...................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................13

*In re RJR Nabisco, Inc. Sec. Litig.*,
   1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...................................................................11

MEMORANDUM OF POINTS & AUTHORITIES
Case No. 3:07-cv-00488-H-CAB

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .................................................................3

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ..............................................................11

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ..............................................................11

*Thornberry v. Delta Air Lines, Inc.*,
   676 F.2d 1240 (9th Cir. 1982) ............................................................16

*Thornberry v. Delta Air Lines, Inc.*,
   461 U.S. 952 (1983)............................................................................16

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..................................................................3

*In re United States Bioscience Sec. Litig.*,
   155 F.R.D. 116 (E.D. Pa. 1994).........................................................12

*Van Vraken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .....................................................13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................... passim

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .......................................................7, 9, 13

*In re WorldCom, Inc. Sec. Litig.*,
   2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ....................................13

**STATUTES**

15 U.S.C. § 77z-1(a)(6)...........................................................................3

15 U.S.C. § 78j-4(a)(4) ..........................................................................17

15 U.S.C. § 78u-4(a)(4) ......................................................................2, 17

Pursuant to the Court's Order Preliminarily Approving Settlement And Providing For Notice, dated August 4, 2009 (the "Preliminary Approval Order" or "Notice Order"), and paragraphs 6.1 and 6.2 of the Stipulation of Settlement dated June 23, 2009, Lead Counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G" or "Lead Counsel"), respectfully submits this motion for entry of an order awarding attorneys' fees and expenses relating to the prosecution of the claims by Lead Plaintiff, the Arkansas Teacher Retirement System ("Lead Plaintiff" or "Arkansas Teacher"), acting on behalf of itself and all Settlement Class Members in the above-titled action (the "Litigation"), against defendants Accredited Home Lenders Holding Co. ("Accredited" or the "Company"), and James Konrath, Joseph J. Lydon, John S. Buchanan, Stuart D. Marvin, and Jeffery W. Crawford (the "Individual Defendants"; collectively with Accredited, "Defendants").[1]

## I.   **PRELIMINARY STATEMENT**

Lead Plaintiff and Lead Counsel have succeeded in reaching a proposed Settlement with Defendants for $22 million in cash, plus accrued interest for the benefit of the Settlement Class. The funds were required to be deposited into an escrow account no later than September 11, 2009, to accrue interest for the benefit of the Settlement Class.[2]

As detailed in the accompanying Stickney Declaration, the Settlement was achieved only after the Parties actively litigated the case for over two years, and in the face of Accredited's deteriorating financial condition which resulted in Accredited filing for bankruptcy protection. Lead Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint.   Lead Counsel's efforts included preparation of a consolidated complaint, opposing Defendants' motions to dismiss, obtaining evidence through discovery, consultation

---

[1]  This Motion is supported by the accompanying Declaration of David R. Stickney in Support of Final Approval of Settlement and Plan of Allocation, and Approval of Award of Attorneys' Fees and Expenses ("Stickney Decl."); the Stipulation of Settlement dated June 23, 2009, filed on July 15, 2009 [Doc. No. 210 ] (the "Stipulation"); all other pleadings filed in this case; and such additional evidence or argument as may be presented at the hearing.  Unless otherwise defined herein, all capitalized terms have the meaning stated in the Stipulation.

[2]  As of the filing of this Motion, only $12,986,116.00 of the Settlement Amount has been funded.

1  with experts, moving for class certification, and preparation and participation in mediation

2  sessions before an experienced mediator.  Lead Counsel conducted a thorough investigation of

3  the facts and claims of this case, including review and analysis of the Company's SEC filings,

4  annual reports, and other public statements; interviews with confidential witnesses; review and

5  analysis of over four million pages of documents produced by Defendants and third parties;

6  analyses of potential sources of recovery; and 17 depositions.

7  Lead Counsel undertook the prosecution of this Litigation on an entirely contingent basis.

8  As compensation for the efforts expended to achieve the outstanding result for the Settlement

9  Class, Lead Counsel is applying for fees constituting 25% of the Settlement Fund net of Court-

10  approved litigation expenses, or $5,317,936.16, together with interest at the same rate as that

11  earned on the Settlement Fund, and for reimbursement of $728,255.35 in out-of-pocket

12  expenses.[3]  The percentage fee requested was agreed to and approved by Lead Plaintiff, a

13  sophisticated institutional investor with substantial experience in prosecuting securities class

14  actions under the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  *See* Stickney

15  Decl. ¶85.  That fee percentage is in line with the benchmark established by the Ninth Circuit.

16  *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson,*

17  *Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989)).  In addition, a lodestar cross-check

18  affirms the reasonableness of the requested fee award.  Plaintiffs' Counsel devoted substantial

19  resources to prosecuting this action for years, spending over 12,184.90 hours for a total lodestar

20  of $4,630,185.  Thus, the multiplier of just 1.1 supports the reasonableness of the fee request.

21  As of September 9, 2009, Notice of Lead Counsel's proposed fee application was sent to

22  4,542 potential Settlement Class Members.  *See* Declaration of Jennifer M. Keough Re:  Notice

23  Dissemination And Publication ("Keough Decl.") ¶8, attached as Ex. 1 to Stickney Decl.  The

24  deadline for Settlement Class Members to object to the Settlement and/or Lead Counsel's fee

25  application, or to seek exclusion from the Settlement Class, expires on October 13, 2009.  As of

---

26
27  [3]  The expenses for which reimbursement is sought include those expenses of Lead Counsel
     BLB&G, as well as of Plaintiffs' Counsel, Chimicles & Tikellis, LLP and Sarraf Gentile LLP,
28  counsel for plaintiff William F. Kornfeld, Jr.  Mr. Kornfeld also requests an award of $5,000
     pursuant to 15 U.S.C. § 78u-4(a)(4).

the filing date of this Motion, not a single Settlement Class Member has objected or requested exclusion. *See* Keough Decl. ¶¶12-13.

## II.   HISTORY OF THE LITIGATION

Lead Counsel respectfully refers the Court to the accompanying Stickney Declaration for a description of the procedural history of the Litigation, the claims asserted, the investigation and discovery undertaken, the negotiations and description of the Settlement, and the substantial risks and uncertainties of the Litigation.

## III.   THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.   A Reasonable Percentage Of The Fund Recovered Is An Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases

Lead Counsel seeks a reasonable percentage of the common fund recovered for the benefit of the Settlement Class.  The PSLRA requires that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 77z-1(a)(6) (emphasis added).  The Ninth Circuit has expressly approved the percentage-of-recovery approach and this approach has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit.  *Paul, Johnson*, 886 F.2d at 273; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Vizcaino*, 290 F.3d 1043; *In re Omnivision Techs.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citations omitted).

The percentage method is desirable because it most fairly correlates the compensation of counsel with the benefit conferred upon the class.  *See Omnivision,* 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of using the percentage method).  First, it closely aligns the lawyers' interest in being paid a fair fee with the interest of

the class in achieving the maximum possible recovery in the shortest amount of time.[4]  Second, the percentage method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.  *See Gerstein v. Micron Tech.*, 1993 U.S. Dist. LEXIS 21215, at *14 (D. Idaho Sept. 10, 1993) ("This court favors the percentage approach [in common fund cases] because it conserves scarce judicial resources by saving the court from having to make a series of largely judgmental decisions with respect to the actual fees claimed."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989).  It is also consistent with the practice in the private marketplace where contingent-fee attorneys are customarily compensated by a percentage of the recovery.

### B.  A Fee Of 25%, Net Of Expenses, Is Reasonable

After the decision is made to apply the percentage method of fee determination, courts must determine what percentage to apply.  The Ninth Circuit and this Court have recognized that 25% of the settlement amount is the appropriate benchmark for attorneys' fees awarded under the percentage method.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25% in attorneys' fees as a "benchmark award"); *In re PETCO Corp. Sec. Litig.,* Case No. 05-CV-0823 (Huff, J.), Order Finally Approving Class Action Settlement And Plan Of Allocation Of Settlement Proceeds And Granting Lead Plaintiff's Counsel's Motion For An Award Of Attorney Fees And Expenses, at 5 (S.D. Cal. Sept. 2, 2008) (Docket No. 397) ("*PETCO* Order") ("The Ninth Circuit has established 25% of the common fund as a

---

[4]  The court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), identified the aligning of lawyers' and clients' interest as among the merits of the percentage approach:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client.  The lawyer gains only to the extent his client gains . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours.  Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants...

> At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

'benchmark' for what constitutes a reasonable fee"; granting attorney fee award of 25% of the gross settlement fund).

Here, in view of, among other circumstances, the litigation risks faced; the result achieved; the skill required and the quality of the representation; the endorsement of the fee by the sophisticated and experienced institutional Lead Plaintiff; and the support of the Settlement Class, an award of 25% of the net Settlement Fund is eminently justified.

### C. Consideration Of The Relevant Factors Used By Courts In The Ninth Circuit Justifies A Fee Award Of 25%

The ultimate task for this Court in awarding attorneys' fees is to ensure that Lead Counsel is fairly compensated for the work it performed and the results it achieved. Courts in this Circuit consider the following factors: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class to the proposed fee and expense request; and (7) the amount of a lodestar cross-check. *See Vizcaino,* 290 F.3d at 1048-50; *see also Omnivision,* 559 F. Supp. 2d at 1046-48. As discussed below, application of these factors here confirms that the 25% fee is justified.

#### 1. The Results Achieved

Lead Counsel has succeeded in obtaining a $22 million cash Settlement for the Settlement Class. This achievement was the result of Lead Counsel's vigorous prosecution, settlement negotiations and advocacy before the Bankruptcy Court. As a result of this Settlement, Settlement Class Members will receive immediate compensation for their losses as a result of the violations of §§ 10(b), 20(a) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") by Defendants, based on false statements and omitted material facts concerning Accredited's reported financial results, underwriting standards, and business risks and conditions. The immediate Settlement will avoid the substantial risks of no recovery due in large part to the limited potential sources of recovery, including Accredited's bankruptcy filing and the rapidly depleting insurance proceeds.

1   Courts have consistently recognized that the settlement achieved is a major and perhaps
2   the most important factor to be considered in determining an appropriate fee award. *See*
3   *Omnivision,* 559 F. Supp. 2d at 1046 (citation omitted); *see also PETCO Order,* at 10 (awarding
4   attorneys' fee of 25% of the gross settlement fund, where the settlement fund obtained was
5   $20.25 million).

6   As detailed in the Stickney Declaration and discussed below, Lead Plaintiff faced
7   numerous obstacles in this Litigation.  The timing of the Settlement was crucial to maximize the
8   recovery and speed of payment to the Settlement Class.  Given Accredited's precarious financial
9   position, the immediate benefit to the Settlement Class is especially great in light of the real risk
10   that, later, Defendants would be unable to meaningfully satisfy a substantial judgment.  Here,
11   Accredited's officer and corporate liability insurance coverage was being depleted by defense
12   costs and likely would have been completely depleted during the Litigation.

13   In addition to the risks of no recovery due to limited financial sources, the expense and
14   length of continued proceedings necessary to prosecute the Litigation through dispositive
15   motions, further discovery, trial and appeals would be substantial.  *See PETCO Order,* at 6
16   ("Even if Lead Plaintiff succeeded in proving Defendants' liability, numerous legal and factual
17   uncertainties could have resulted in a recovery (if any) of much less than the settlement amount,
18   and appellate litigation would have brought additional risk, delay and uncertainty.").

19   Lead Plaintiff, aided by Lead Counsel, carefully considered the likelihood of success
20   against Defendants, the potential total damages that could be recovered against Defendants, as
21   well as the uncertain outcome and risk of any litigation, especially in complex actions such as
22   this, and the difficulties and delays inherent in such litigation.

23   Particularly in light of these circumstances, the amount obtained is a substantial
24   achievement on behalf of the Settlement Class, and weighs in favor of granting the requested
25   25% fee.  *See  Vizcaino,* 290 F.3d at 1050 n.5 (noting that counsel's achievement of a "timely
26   result" may support a fee request); *cf. Lewis v. Starbucks Corp.,* 2008 WL 4196690, at *7 (E.D.
27   Cal. Sept. 11, 2008) (finding use of lodestar approach would inappropriately punish plaintiff's
28   counsel for achieving a favorable settlement "at an early stage").

### 2. <u>Risks Of Litigation</u>

Risk that further litigation might result in plaintiffs not recovering at all is an important factor in determining a fair fee award. *See, e.g., Omnivision,* 559 F. Supp. 2d at 1046-47; *In re Wash. Pub. Power Supply Sys. Sec. Litig. ("WPPSS"),* 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *PETCO Order,* at 6 ("Next, the Court notes that for the duration of this case Lead Plaintiff's counsel faced significant risks and uncertainties regarding whether a favorable result could be obtained.").

While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased exponentially. Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). According to an April 2006 NERA study, dismissal rates have doubled since the PSLRA, accounting for 40.3% of dispositions. *See* Ronald I. Miller, et al., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?*, at 4 (NERA Apr. 2006).

In this Litigation, Lead Counsel, like the Settlement Class Members, faced the substantial risk that there would be no recovery at all due to, among other things, the limited sources of recovery, including Accredited's bankruptcy filing. As discussed above, there was a real risk that Defendants would be unable to meaningfully satisfy a judgment.

There were also myriad additional risks in this case. Defendants argued in their motions to dismiss, and would likely have continued to argue, that industry-wide forces caused the investors' losses and not the alleged misstatements. Moreover, Defendants disputed that they made any false statements, and contended that Plaintiffs lacked evidence of scienter.

Lead Counsel achieved a $22 million recovery for the Settlement Class in the face of these very substantial risks. Under these circumstances, the requested fee is fully justified.

### 3.     The Skill Required And Quality Of The Work Performed

The third factor to consider in determining what fee to award is the skill required and quality of work performed. *Gustafson v. Valley Ins. Co.,* 2004 WL 2260605, at \*2 (D. Or. Oct. 6, 2004). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' [citation omitted]. This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision,* 559 F. Supp. 2d at 1047; *see also Heritage Bond*, 2005 WL 1594389, at \*12 ("The experience of counsel is also a factor in determining the appropriate fee award.").

Here, the attorneys at BLB&G are among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record in such cases.[5] From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class. Lead Counsel demonstrated that it would work to develop sufficient evidence to support a convincing case. Through Lead Counsel's persistent and skillful work, Lead Plaintiff was able to plead detailed allegations, and largely defeat Defendants' motions to dismiss, based, in part, on the information provided by confidential witnesses. *See* Stickney Decl. ¶¶4, 87.

As detailed in the Stickney Declaration, Lead Counsel also demonstrated skill in moving the case forward and resisting Defendants' efforts to delay proceedings. Lead Counsel also successfully obtained and analyzed over four million pages of documents produced by Defendants and third parties, and completed seventeen depositions that elicited helpful information. *Id.* ¶¶84, 87, 91.

Lead Counsel's skill and experience was also key in communicating with the experts it necessarily retained in this complicated securities class action, including experts regarding damages, accounting, valuation, the mortgage industry and bankruptcy. *Id.* ¶¶84, 87.

---

[5]  *See* Firm Resume of BLB&G, attached as Ex. 3 to the Stickney Decl.

The fact that Lead Counsel has demonstrated a willingness and ability to prosecute complex cases such as this throughout trial and appeals was undoubtedly a factor that encouraged Defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Settlement Class.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Lead Counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Here, Accredited was represented by Kirkland & Ellis LLP and Luce Forward, and the Individual Defendants were represented by Paul, Hastings, Janofsky & Walker LLP, prominent, national law firms with substantial experience in securities class actions.  Thus, the fact that Lead Counsel achieved this Settlement for the Settlement Class in the face of formidable legal opposition further evidences the quality of their work.

### 4.    The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.[6]

The Honorable Irma E. Gonzalez likewise recently confirmed that the contingent nature of class counsel's recovery supports an attorney fee request, there a request for recovery of one-third of the settlement fund.  She explained as follows:

---

[6] *WPPSS*, 19 F.3d at 1299; *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007) ("Plaintiffs' counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation."); *see also Omnivision,* 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.") (citations omitted).

1
2
3
4
5
6

Class counsel prosecuted this case on a contingent basis. The Court finds that there is a substantial difference between the risk assumed by attorneys being paid by the hour and attorneys working on a contingent fee basis. The attorney being paid by the hour can go to the bank with his fee. The attorney working on a contingent basis can only log hours while working without pay towards a result that will hopefully entitle him to a market place contingent fee taking into account the risk of the undertaking. Otherwise, the contingent fee attorney receives nothing. Class Counsel subjected themselves to this contingent fee market risk in this all or nothing contingent fee case wherein the necessity and financial burden of private enforcement makes the requested award of one-third of the settlement value to the Class appropriate.

7   *McPhail v. First Command Fin. Planning, Inc.,* 05 CV 0179 (IEG), Order Awarding Attorneys'

8   Fees and Litigation Expenses to Class Counsel, at 1 (S.D. Cal. Mar. 30, 2009) (Docket No. 273)

9   ("*First Command Order*"); *PETCO Order,* at 6 ("Additionally, the contingent nature of the fee

10  involved substantial risk for Lead Plaintiff's counsel.").

11       Here, Plaintiffs' Counsel received no compensation during the course of this Litigation

12  and invested $4,630,185 in time, and incurred expenses (totaling $728,255.35), in obtaining the

13  Settlement for the benefit of the Settlement Class. *See* Stickney Decl. ¶93. Additional work in

14  connection with the Settlement and claims administration will also be required. In addition to

15  the advancement of costs, lawyers working on the case have forgone the business opportunity to

16  devote time to other cases. *See Vizcaino*, 290 F.3d at 1050; *First Command Order,* at 2 (finding

17  supporting of fee award the fact that class counsel "had to forego other employment on other

18  cases so as to devote the necessary time and resources to this case"). Any fee award has always

19  been at risk, and completely contingent on the result achieved and on this Court's discretion in

20  awarding fees and expenses.

21       Indeed, the risk of no recovery in complex cases is very real. Lead Counsel knows from

22  personal experience that, despite the most vigorous and competent efforts, its success in

23  contingent litigation such as this is never guaranteed. The commencement of a class action is no

24  guarantee of success. These cases are not always settled, nor are plaintiffs' lawyers always

25  successful.[7] Hard, diligent work by skilled counsel is required to develop facts and theories to

26  prosecute a case or persuade defendants to settle on terms favorable to the Settlement Class.

27  _____

28  [7]  Indeed, the accompanying Motion For Final Approval Of Settlement And Plan Of Allocation describes two recent cases where plaintiffs' class counsel has either lost at trial (and was forced

### 5.      Awards Made In Similar Cases

Lead Counsel seeks a fee equal to the Ninth Circuit's 25% benchmark for common fund cases.  "However, in most common fund cases, the award exceeds that benchmark." *Omnivision,* 559 F. Supp. 2d at 1047 (approving 28% fee award in securities class action) (citing *Activision,* 723 F. Supp. at 1377-78 (surveying securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%")); *see also Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (approving 30% fee award).  The fee sought of 25% of the net Settlement Fund is consistent with, or less than, awards made in other securities cases within this District and others.  *See, e.g., PETCO Order,* at 6-7 ("The Court also concludes that 25% is consistent with (and in many cases, lower than) the fees awarded in comparable cases in this district and others . . . ."); *First Command Order,* at 1-2 (awarding attorneys' fees of 30% of gross settlement fund).

In addition, many courts weigh the customary fee in the marketplace for non-class action contingency cases as a significant measure in approving fees.  *See e.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern such [fee]awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases"); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services . . . .").

Although the Ninth Circuit has not adopted the marketplace analogy as a factor to consider in setting fees in class actions, it has expressly recognized the analogy as at least "probative" of what fee is reasonable.  *Vizcaino*, 290 F.3d at 1049.  If this were a non-class

---

to pay all of defendants' costs) or won at trial only to have a substantial judgment overturned through post-trial motions. *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (Verdict and Settlement Summary) (N.D. Cal. Nov. 27, 2007), and *In re Apollo Group, Inc. Sec. Litig.*, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008).

action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.[8]

Plaintiffs' Counsel's work was performed, and the results achieved, on a wholly contingent basis in the face of determined opposition. Under these circumstances, it necessarily follows that Lead Counsel is entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained. Under all of the circumstances present here, a 25% fee, net of expenses, is fair and reasonable.

### 6.   Reaction Of The Settlement Class Supports The Fees And Expenses Sought

The reaction of the class to a proposed settlement and fee request is a significant factor in approving fees. *See Red Door Salons,* 2009 WL 248367, at *7; *Omnivision,* 559 F. Supp. 2d at 1048. Here, as of September 9, 2009, the Notice was sent to 4,542 potential Settlement Class Members and Summary Notice was published in the national edition of *The Investor's Business Daily. See* Keough Decl. ¶8. The Notice informed Settlement Class Members that Lead Counsel shall, and intends to, apply for attorneys' fees in an amount not to exceed 25% of the net Settlement Fund. The Notice advised Settlement Class Members of their right to object to the Settlement, the Plan of Allocation or the request for attorneys' fees and expenses. The deadline for filing any objections expires on October 13, 2009. As of the date of this Motion, notably, no

---

[8]  *See, e.g., Ikon,* 194 F.R.D. at 194 ("in private contingency fee cases, particularly in tort matters plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *accord Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (concurring opinion); *In re United States Bioscience Sec. Litig.*, 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action); *see also Kirchoff*, 786 F.2d at 323 (observing that 40% is the customary fee in tort litigation); *In re Pub. Service Co. of New Mexico*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("[i]f this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery"); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("[i]n private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984) ("[t]he percentages agreed on [in non-class-action damage lawsuits] vary, with one-third being particularly common").

member of the Settlement Class has objected or requested exclusion. *Id.* ¶¶12-13. This factor further supports the requested award of 25% of the net Settlement Fund. *See Red Door Salons,* 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision,* 559 F. Supp. 2d at 1048 (only three objections supports 28% award).

### 7. The Lodestar Crosscheck Confirms The Reasonableness Of The Requested Fee

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common-fund cases, courts may use a lodestar analysis "as a cross-check on the percentage method." *See Vizcaino*, 142 F. Supp. 2d at 1302; *In re Immunex Sec. Litig.*, 864 F. Supp. 142, 144 (W.D. Wash. 1994); *WPPSS*, 19 F.3d at 1296-98. Here, such a "cross-check" confirms that the requested fee amount is reasonable.

In *Vizcaino,* the Ninth Circuit noted that

> courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . . This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. . . . In common fund cases, "attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose."

290 F.3d at 1051 (quoting *WPPSS,* 19 F.3d at 1300).

There, the Ninth Circuit affirmed a fee awarded in this District that equaled 28% of the settlement fund and a multiplier of 3.65. Indeed, in cases applying the lodestar method, fee "'multipliers of between 3 and 4.5 have been common.'"[9]

---

[9] *Rabin v. Concord Assets Group, Inc.,* 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4) (citation omitted); *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *see also Keith v. Volpe,* 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5); *see also In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *17 (S.D.N.Y. Nov. 12, 2004) (multiplier of 2.46); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) (multiplier of 2.13); *Kurzweil v. Philip Morris Cos.,* 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (recognizing that multipliers of between 3 and 4.5 are common in federal securities cases); *see also PETCO Order,* at 7 ("[C]ourts in the Ninth Circuit generally consider positive multipliers of 2.0 through 4.0 to be reasonable.").

Here, Plaintiffs' Counsel's lodestar is $4,630,185.[10]  Thus, Lead Counsel's request for an award of $5,317,936.16 in attorneys' fees seeks a multiplier of only 1.1.  Courts have routinely held that such multipliers are fair and reasonable.  *See, e.g., Vizcaino*, 290 F.3d 1043 (affirming fee award equaling 28% of the settlement fund, resulting in a 3.65 multiplier).  Further, Lead Counsel's lodestar does not account for the additional time that will be required of Lead Counsel to participate in the final approval process and to oversee the claims administration process and the distribution of the net settlement funds to eligible claimants.

### IV.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE SETTLEMENT CLASS

Lead Counsel also requests that the Court grant its application for $728,255.35 to reimburse costs in connection with the prosecution of this Litigation.[11]  The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris*, 24 F.3d at 19 ("[Plaintiff] may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citations omitted).

The expenses which Lead Counsel seek are the type of expenses routinely charged to hourly paying clients.  *See PETCO Order,* at 7 ("The Court concludes that the expenses – which include experts, consultants and investigators; mediation fees; travel costs; court reporting and deposition costs; and legal research . . . are compensable in common fund cases such as this one, since they are the type of costs typically billed by attorneys to fee-paying clients in the marketplace.").  For example, included in the amount of expenses is $164,510.14 paid or payable to Lead Plaintiff's damage consultant, Forensic Economics, Inc.   The damage consultant provided Lead Counsel with substantial assistance in connection with the development,

---

[10]  *See* Stickney Decl. ¶88.

[11]  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.") (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

prosecution and settlement of the Litigation, as well as drafting the Plan of Allocation for disbursement of the settlement proceeds.  *See* Stickney Decl. ¶103.  Additional experts were also necessarily retained in the areas of accounting, valuation, the mortgage industry and bankruptcy. *See id.* ¶47.

As detailed in the Stickney Declaration, Accredited's bankruptcy filing following the agreement in principle to settle this case required that Lead Counsel participate in, monitor and appear in the related Bankruptcy Court proceedings in order to ensure that Settlement Class Members' interests were not compromised or extinguished in the bankruptcy case, and that the Bankruptcy Court's authorization was obtained in a timely manner.  Stickney Decl. ¶66.  In order to participate effectively in the bankruptcy proceedings, Lead Counsel necessarily retained counsel with expertise in the specialized area of bankruptcy law, Michael Etkin of Lowenstein Sandler PC.  Mr. Etkin is highly experienced in Bankruptcy Court proceedings in the Delaware Bankruptcy Court where Accredited filed its bankruptcy petition, including specifically bankruptcy cases involving parallel securities litigation.

For example, as detailed in the Stickney Declaration, the tasks related to the bankruptcy proceedings, included, *inter alia*: (i) extensive review and analysis of filings in the bankruptcy proceedings; (ii) negotiation of a consent order and other related documents in order to obtain limited relief from the bankruptcy stay; (iii) appearance in the Bankruptcy Court, including to oppose Accredited's continuance of its motion for Bankruptcy Court approval of the Settlement; (iv) subsequent appearance in the Bankruptcy Court for the purpose of obtaining final Bankruptcy Court approval of the Settlement; (v) multiple telephonic conferences with counsel for the Debtor and counsel for the Official Committee of Unsecured Creditors; (vi) preparation of material filed with the Bankruptcy Court regarding this Settlement; and (vii) notifying this Court of the status of the bankruptcy proceedings.  Stickney Decl. ¶66.  As a result of these additional proceedings and skill required, Lead Plaintiff incurred an additional $67,857.65 in expenses.  Courts have approved of expense reimbursement awards including time and expenses necessitated by hiring outside bankruptcy counsel, including Mr. Etkin specifically.  *See, e.g., In re Quintus Sec. Litig.,* 2006 WL 3507936, at *4 (N.D. Cal. Dec. 5, 2006).

The expenses also include the costs of on-line legal research in the amount of $28,927.06. These are the charges for computerized legal research services such as *Lexis-Nexis* and *Westlaw*. It is standard practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them in researching legal issues. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996). Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). In approving expenses for computerized research, the court in *Gottlieb v. Wiles* underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged. 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).

In addition, Lead Counsel received over four million pages of documents produced by both parties and non-parties during the course of the Litigation. In order to effectively and efficiently review and analyze the more than four million pages of documents, a document management system and database were necessary. Duplication of many of these documents obtained in discovery was necessary for the effective prosecution of the case. Included in the expense request above is $34,479.37, for reimbursement of internal and external copying costs. Stickney Decl. ¶104.

Further, Plaintiffs' Counsel was required to travel in connection with, among other things, courts proceedings, depositions and mediation, and thus incurred the related costs of airline tickets, meals and lodging. Included in the expense request is $13,230.47, for travel expenses necessarily incurred for the prosecution of this Litigation. The expenses in this category are reasonable in amount, and are properly charged against the fund created.[12]

---

[12] *See Thornberry v. Delta Air Lines,* 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and remanded on other grounds*, 461 U.S. 952 (1983); *see also Red Door Salon,* 2009 WL 248367, at *7 (approving of expenses relating to "online legal research, travel, postage and messenger services, phone and fax charges, copying, court costs, and the costs of travel"); *Omnivision,* 559 F. Supp. 2d at 1048 (approving of expenses relating to "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case").

In connection with depositions and court proceedings, counsel also incurred $57,272.39 for court reporting and transcripts.  Stickney Decl. ¶107.

As stated in the Notice, Plaintiff William F. Kornfeld, Jr. ("Kornfeld") also separately applies to the Court for a service award in the amount of $5,000.  In support of his application, Mr. Kornfeld submits his declaration, describing his service and time spent in the Litigation.  *See* Declaration of William F. Kornfeld, Jr., attached as Ex. 8 to Stickney Decl.  Under the PSLRA, the Court has discretion to grant an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."   15 U.S.C. § 78u-4(a)(4); *see also First Command Order,* at 2 (awarding amounts pursuant to 15 U.S.C. § 78j-4(a)(4) ranging from $923.20 to $10,422.30).

And finally, the Court-approved Notice provided to potential Settlement Class Members informed them that Lead Counsel intended to seek expenses incurred in the prosecution of the Litigation not to exceed $750,000.  The amount of expenses now sought is less than the amount in the Notice – approximately $728,000.  The deadline for objecting to the fee and expense application expires on October 13, 2009.  As of the filing date of this Motion, no Settlement Class Member has objected or sought exclusion from the Settlement Class.  Keough Decl. ¶¶12-13.

## V.   <u>CONCLUSION</u>

From the beginning of this Litigation, Lead Plaintiff has faced determined adversaries represented by experienced counsel.  With no assurance of success, Lead Plaintiff and Lead Counsel pursued the Litigation, and successfully obtained a $22 million Settlement that has accrued interest to the benefit of the Settlement Class.  The Settlement reflects Lead Counsel's efforts in the face of significant risk.  Accordingly, Lead Counsel respectfully submits that the Court should approve the fee and expense application and enter the proposed Order submitted herewith awarding Lead Counsel 25% of the Settlement Fund net of litigation expenses, or

$5,317,936.16, in fees, plus interest at the rate accrued by the Settlement Fund, and $728,255.35 in expenses, plus interest at the rate accrued by the Settlement Fund.

Dated:  September 16, 2009                    Respectfully submitted,

                                              BERNSTEIN LITOWITZ BERGER
                                                & GROSSMANN LLP


                                              _____*/s/ David R. Stickney*_____
                                                   DAVID R. STICKNEY

                                              DAVID R. STICKNEY
                                              NIKI L. MENDOZA
                                              TAKEO A. KELLAR
                                              12481 High Bluff Drive, Suite 300
                                              San Diego, CA 92130
                                              Tel:    (858) 793-0070
                                              Fax:    (858) 793-0323
                                                         -and-
                                              CHAD JOHNSON
                                              1285 Avenue of the Americas
                                              New York, NY  10019
                                              Tel:    (212) 554-1400
                                              Fax:    (212) 554-1444

                                              *Attorneys for Lead Plaintiff Arkansas Teacher*
                                              *Retirement System and Lead Counsel to the Class*